UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LEROY WILLIAMS, GHASSAN
JEANBART, and AIDAN MAISONAVE
individually, and on behalf of all others
similarly situated,

Plaintiffs,

-against-

GARY NUDELMAN a/k/a GARY
NEWMAN, TAMIR KOVACH, A
WORLD OF PUPS INC., A WORLD
OF PETS & SUPPLIES, LTD., A
WORLD OF PUPS AND PETS INC.,
NY BREEDERS LTD., and JOHN AND
JANE DOES 1 -40,

Defendants.

Civil Action No.
15-cv-5242-RRM-SMG

**SECOND
AMENDED AND
SUPPLEMENTAL
CLASS AND
COLLECTIVE
ACTION
COMPLAINT**

JURY TRIAL
DEMANDED

Plaintiffs Leroy Williams, Ghassan Jeanbart, and Aidan Maisonave ("Plaintiffs") on

behalf of themselves and all others similarly situated, by their attorneys, The Marlborough Law

Firm, P.C. and Slater Slater Schulman LLP, respectfully allege, upon knowledge as to

themselves and upon information and belief as to all other matters, the following:

## NATURE OF THE ACTION

1.     Plaintiffs are current and former workers employed by Defendant Gary

Nudelman ("Nudelman") and the Corporate Defendants (defined below, collectively with

Nudelman and Defendant Tamir Kovach ("Kovach"), "Defendants") he controls to work at

one or more of Defendants' three high volume puppy stores known as "A World of Pups.

Inc.," located at 540 86th Street, Brooklyn, New York, and "NY Breeders Ltd." a/k/a "Puppies

Grooming and Supplies," located at 45 Tarrytown Road, White Plains, New York (collectively, the "Puppy Stores").

2.      Plaintiffs bring this action on behalf of themselves and similarly situated employees of Defendants as a collective action for minimum wage and overtime claims under the Fair Labor Standards Act of 1938 ("FLSA") and as a class action for New York State law claims under the New York Labor Law and regulations promulgated thereunder ("NYLL"). Plaintiffs also allege that Nudelman and the corporate Defendants violated the anti-retaliation provisions of the FLSA and the NYLL.

3.      Defendants willfully and systematically failed to pay Plaintiffs and other similarly situated employees overtime premium pay while requiring them to work more than forty hours in a workweek and failed to pay several Plaintiffs and other similarly situated workers the applicable federal and state minimum wage for all hours worked and spread of hours premium pay when applicable.  Defendants also paid all of their workers either entirely or partially off the books, and failed to furnish Plaintiffs and other similarly situated workers with accurate wage statements or provide them with Wage Theft Prevention Act Notifications of Pay Rate, as required by NYLL § 195(1), (3).

4.      Defendants terminated Plaintiff Aidan Maisonave for complaining about Defendants' overtime policies, threatened to and did engage in a systematic effort to blacklist him and his wife from the commercial dog sales and rescue industry and made numerous threats against other current and former employees if they were to participate in this action. This conduct violates the anti-retaliation provisions of the FLSA and the NYLL.

**PARTIES**

5.      Plaintiff Leroy Williams ("Williams") is over 18 years of age and a resident of New York, New York.  Williams worked at Defendants' Brooklyn location as a non-exempt salaried shipping and receiving clerk from approximately August 2013 to October 2014.

6.      Plaintiff Ghassan Jeanbart ("Jeanbart") is over 18 years of age and a resident of Brooklyn, New York.  Jeanbart worked at Defendants' Brooklyn, NY location as a non-exempt hourly kennel worker from approximately February 2013 to late November 2014.

7.      Plaintiff Aidan Maisonave ("Maisonave") is over 18 years of age and a resident of Brooklyn, New York.  Maisonave worked at Defendants' Brooklyn, NY location as a non-exempt sales associate from February 2012 until August 2012, and worked as a non-exempt hourly assistant manager at the Brooklyn location from August 2012 until May 2013. Maisonave also worked as a non-exempt hourly manager at the Westchester location between from May 2013 to July 2013 and at the Brooklyn location from July 2014 to June 18, 2015.

8.      Plaintiffs are covered employees within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and New York Labor Laws § 160 *et seq.* ("NYLL").

9.      Defendant Gary Nudelman a/k/a Gary Newman ("Nudelman") is over the age of 18 and a resident of the State of New York.  Nudelman holds himself out as an owner of the Corporate Defendants defined below, through which he operates the Puppy Stores. Defendant Nudelman is in active control and management of the Puppy Stores, regulates the employment of persons employed at the Puppy Stores, acts directly and indirectly in the interest of the Puppy Stores in relation to the employees, and is thus an employer of Plaintiffs, the collective and the prospective class under the Fair Labor Standards Act and New York State Labor Law.  Defendant Nudelman is also one of the ten largest shareholders of

3

Defendant A World of Pups & Pets, Inc.

10.     Defendant Tamir Kovach is Defendant Nudelman's business partner in the pet store enterprise.  He is one of the top ten shareholders of a World of Pups & Pets, Inc.

11.     Defendant A World of Pups, Inc. is a corporation operating and existing under the laws of the State of New York through which Nudelman operates the Brooklyn, New York location.

12.     Defendant A World of Pets and Supplies, Ltd. is a corporation operating and existing under the laws of the State of New York through which Nudelman operates the Brooklyn, New York location.

13.     Defendant A World of Pups & Pets, Inc. is a corporation operating and existing under the laws of the State of New York through which Nudelman operates the Brooklyn, New York location.

14.     Defendant NY Breeders, Ltd. is a corporation operating and existing under the laws of the State of New York through which Nudelman operates the White Plains, New York location.

15.     Collectively, Defendants A World of Pups, Inc., A World of Pets and Supplies, Ltd., A World of Pups & Pets, Inc. and NY Breeders, Ltd. are referred to as the "Corporate Defendants."

16.     Defendants John and Jane Does 1-40, include but are not limited to the ten shareholders with the largest interest in each of the Defendant Corporations.

17.     Defendants Nudelman, Kovach and the other top ten shareholders of the Corporate Defendants are jointly and severally liable for Plaintiffs' wage claims pursuant to

New York Business Corporations Law § 630.

18. On July 7, 2015, Plaintiffs' counsel sent Defendant Nudelman and several Corporate Defendants a request for inspection of the list of shareholders pursuant to BCL § 630. The letter also provided notice to Defendant Nudelman of his liability as shareholder of the Corporate Defendants, including Defendant A World of Pups & Pets, Inc. Defendants failed to respond to the request. To date, Defendants have only identified the shareholders of Defendant A World of Pups & Pets, Inc.

19. On May 3, 2016, Plaintiffs' counsel sent Defendant Tamir Kovach a letter providing notice to Defendant Kovach of his liability as shareholder of the corporate Defendants, including Defendant a World of Pups & Pets, Inc. pursuant to BCL § 630.

20. Upon information and belief, the John and Jane Does may include Nudelman's business partner and Tamir Kovach's father, Ivan Kovach, co-founder of the Westchester location.

21. According to Defendants' website, www.nybreeder.com, Ivan Kovach has more than fifty years of experience training dogs and combined with Nudelman: "[t]heir experience with both the puppies and the merchandise they carry is evident once you enter the … facility…. The dog trainers and groomers of this new store have been carefully screened by the founders." Defendants Nudelman and New York Breeder failed to identify the shareholders of NY Breeders.

22. Defendants are joint employers under the FLSA and the NYLL and each is jointly and severally liable for the actions of the other Defendants.

23. The Corporate Defendants are under the common control of Defendant

5

Nudelman.

24.     Defendants shared and interchanged employees between the two locations. Many of the Puppy Store workers including Maisonave have been required by Defendant Nudelman to work at both locations.

25.     Defendants shared and interchanged inventory, including pet supplies and puppies, between both Puppy Store locations.

26.     Defendants maintained the same pay practices, including failing to pay minimum wage, failing to pay overtime, failing to pay spread of hours premium pay, and failing to comply with the wage statement and notification of pay rate requirements of the Wage Theft Prevention Act at both Puppy Store locations.

27.     Each of the Corporate Defendants acted directly and indirectly in the interest of each of the other Corporate Defendants in relation to the employees.

28.     The Puppy Stores are operated by Defendants as a single enterprise, based on the related activities, unified operations and common control of Nudelman.

29.     Defendants are covered employers within the meaning of the FLSA and the NYLL and, at all relevant times, employed Plaintiffs and similarly situated employees.  Each Corporate Defendant acted directly and indirectly in the interest of the other Corporate Defendants and Nudelman.

## JURISDICTION AND VENUE

30.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA.

6

31.     This Court has supplemental jurisdiction of the claims arising under the New York State law pursuant to 28 U.S.C. § 1367, in that the New York State law claims are so closely related to Plaintiffs' FLSA claims as to form the same case or controversy under Article III of the United States Constitution.

32.     Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiffs, collective and class members, within this judicial district.

## PLAINTIFFS' FACTUAL ALLEGATIONS

33.     Each of the Plaintiffs were hired by Nudelman and employed at one or both of Defendants' Puppy Stores, and each worked for varying lengths of time between September 2009 and the present.

34.     At all relevant times, Defendant Nudelman was and still is the responsible authority in charge of hiring and firing; training; supervising; determining and/or establishing the rate of pay and the method of payment of wages; determining and/or establishing work schedules, shifts and/or hours; determining and/or establishing work duties, assignments and/or tasks; reprimanding or disciplining workers for misconduct; promulgating and enforcing rules and regulations; and determining the terms and conditions of employment for the Plaintiffs and employees at the Puppy Stores.

35.     Plaintiffs and other workers were paid either entirely off the books, or partly in cash and partly off the books at Defendant Nudelman's discretion.

36.     Plaintiffs and other workers were required to log in and out for each shift, using

Defendants' computerized timekeeping system.

37.     Plaintiffs and Defendants' other employees at the Puppy Stores were non-exempt hourly employees, as defined by U.S. Department of Labor's ("DOL") regulations promulgated under the FLSA and by the NYLL and its regulations.

38.     Plaintiffs were and still are entitled to be paid at least one and one-half of their respective regular rates of pay for each hour in excess of forty (40) hours that they worked in any workweek pursuant to the FLSA § 207 and 12 NYCRR 142-2.2.

39.     During the relevant time periods, each of the Plaintiffs and other similar situated workers worked in excess of forty (40) hours in a workweek and were entitled to receive overtime wages.

40.     During the relevant time period, Defendants failed to pay Plaintiffs and other similarly situated workers one and one-half times their regular hourly work rate for any hours that they worked in excess of forty (40) per workweek, in violation of the FLSA and NYLL.

41.     After receiving pre-filing notice from Plaintiffs' counsel that this lawsuit might be filed, Defendant Nudelman admitted to an industry colleague that he does not pay overtime premium pay to his employees who work more than forty hours in a workweek.

42.     Nudelman's comment (in gray) was part of the following email exchange:



43.     Defendants failed to pay Plaintiff Williams and other similarly situated workers the basic minimum wage of $7.25 per hour (until December 30, 2013); $8.00 per hour (from December 31, 2013 until December 30 2014); $8.75 per hour (from December 31, 2014 to December 30, 2014); or $9.00 (from December 31, 2015).

44.     During the relevant time period, Plaintiffs worked shifts in excess of ten (10) hours per day.

45.     Defendants failed to pay Plaintiff Williams and other minimum wage and sub minimum wage workers, a premium of one hour at the basic minimum wage rate when the spread of hours exceeded ten (10) hours or a shift in excess of ten (10) hours ("spread of hour wages"), pursuant to NYLL §§ 190, *et seq.*, and 650, *et seq.*, and 12 NYCRR § 142-2.4.

46.     Plaintiffs and other similarly situated employees are entitled to be paid an additional hour's pay at the basic minimum hourly wage rate for every day that they worked

9

in excess of ten hours and were paid at or below the minimum wage.

47.     At all relevant times, Plaintiffs and other similarly situated employees were entitled to wage statements indicating the regular and overtime rate of pay; the basis of the rate of pay; the dates covered by the payment; the name, address and phone number of the employer; and itemized allowances and deductions, pursuant to NYLL 195(3).

48.     Defendants failed to provide wage statements compliant with NYLL §195(3) to Plaintiffs and other similarly situated employees.

49.     Each of Defendants' employees were paid off the books or partially off the books, and the actual hourly rates and hours worked by each such employee did not appear on each of his or her wage statements.

50.     Since 2011, Defendants have been required to furnish to Plaintiffs and other similarly situated workers and receive a written acknowledgement of receipt from them of a Wage Theft Prevention Act notification of pay rate pursuant to NYLL 195(1).  Between 2012 and 2014, Defendants were also required to furnish such notices Plaintiffs and other similarly situated workers on an annual basis.

51.     Defendants failed to provide Wage Theft Prevention Act notification of pay rates to Plaintiffs both annually and at the commencement of their employment, in violation of NYLL § 195(1).

52.     Plaintiffs have been victims of a common policy and plan perpetrated by Defendants that has violated their rights under the FLSA and NYLL by denying them pay, including, without limitation, minimum wage, overtime wages, spread of hours wages and the full amount of wages to which they are entitled.

53.     At all relevant times, Defendants' violations of the FLSA and NYLL have been intentional, willful and in bad faith.

**Plaintiffs' Wage Claims**

**Plaintiff Leroy Williams**

54.     Plaintiff Leroy Williams was employed by Defendants as a non-exempt salaried shipping and receiving clerk at Defendants' Brooklyn Puppy Store from August 2013 to October 2014.

55.     As part of his duties, Plaintiff Williams fulfilled online orders through Defendants' centralized Amazon.com vendor service.

56.     Plaintiff Williams' pay stubs did not indicate the number of hours that he worked during the pay period.

57.     Plaintiff Williams' regular weekly schedule was six days per week, from 9 a.m. to between 7 - 9 p.m.  During the holidays, in November and December, Plaintiff Williams was required to arrive at work at 9 a.m. and regularly worked up to eleven hours per day, seven days per week.

58.     Defendants fraudulently reported Plaintiff Williams' earning on his pay stubs.

59.     Williams was paid partially by check and partially in cash off the books.  He was paid $100-$200 in cash in the first week of each pay period.  In the second week, he was given a $500 check and required to pay Defendant Nudelman up to $150 in cash from the check. Plaintiff Williams hourly rate amounted to as little as $3.50 per hour.

60.     In connection with this litigation, Defendants fraudulently altered Plaintiff Williams' time records in order to make it appear as though he worked less hours than he

actually did.

61.     Defendants utilized the DARTS computerized timekeeping system. Upon information and belief, Defendant Nudelman is the only person with authority and computer code to alter time records.

62.     Plaintiff Williams was entitled to but did not receive overtime premium pay for all hours worked in excess of forty hours per week.  He received no overtime premium pay.

63.     Plaintiff Williams was entitled to but did not receive minimum wage for all hours worked.

64.     Plaintiff Williams was entitled to but did not receive spread of hours premium pay when the spread of hours exceeded ten hours in a single workday.

65.     Plaintiff Williams never receives accurate wage statements or Wage Theft Prevention Act Notifications of Pay Rate, either annually or at the commencement of his employment.

**Plaintiff Ghassan Jeanbart**

66.     Plaintiff Ghassan Jeanbart was employed by Defendants as a non-exempt kennel worker at Defendants' Brooklyn Puppy Store from approximately February 18, 2013 to November 29, 2014.

67.     Plaintiff Jeanbart was paid at an hourly rate between $7.25 and $9.50 per hour.

68.     Plaintiff Jeanbart was primarily responsible for caring for the puppies in the Puppy Store.  His regular weekly schedule during the school year was three days per week, from 9 a.m. to 9 p.m. and five hours on a fourth day.  In May and June of both years of his employment, Plaintiff Jeanbart worked approximately fifty-three hours per week.  During July

12

and August during both years of his employment when the kennel was short-staffed, Plaintiff Jeanbart worked seven twelve-hour days per week (9 a.m. to 9 p.m.).

69.     Plaintiff Jeanbart never received uninterrupted meal breaks of more than twenty minutes.  Plaintiff Jeanbart was paid entirely in cash off the books.

70.     In connection with this litigation, Defendants fraudulently altered Plaintiff Jeanbart's time records in order to make it appear as though he worked less hours than he actually did.

71.     Plaintiff Jeanbart was entitled to but did not receive overtime premium pay for all hours worked in excess of forty hours per week.

72.     Plaintiff Jeanbart regularly worked more than ten hours in a single workday while being paid at the minimum wage.

73.     Plaintiff Jeanbart was entitled to but did not receive spread of hours premium pay when the spread of hours exceeded ten hours in a single workday under these circumstances.

74.     Plaintiff Jeanbart never received accurate wage statements of Wage Theft Prevention Act Notices, either annually or at the commencement of his employment.

**Plaintiff Aidan Maisonave**

75.     Plaintiff Maisonave was employed by Defendants from February 2012 until June 18, 2015.

76.     Plaintiff Maisonave worked as a non-exempt hourly sales associate at the Brooklyn Puppy Store from approximately February 2012 to August 2012.  He worked as an hourly assistant manager from August 2012 until Spring 2013 at the Brooklyn Puppy Store.

He worked for Defendants as a non-exempt hourly manager of the White Plains Puppy Store from Spring 2013 - August 2013 and a non-exempt hourly manager at the Brooklyn Puppy Store from September 2014 to June 18, 2015.

77.     Plaintiff Maisonave's pay stubs did not indicate the number of hours that he worked during the pay period.

78.     Maisonave's regular weekly schedule was six - seven days per week, from 9 a.m. to between – 8 and 10 p.m.  Maisonave was paid part in cash and part off the books.  He regularly worked up to 72 hours per week.

79.     Defendants fraudulently reported Plaintiff Maisonave's earnings on his paystubs.

80.     As a sales associate Plaintiff Maisonave was paid $9.00 per hour with $100 on the books plus a small commission for puppy sales.

81.     As an assistant manager Plaintiff Maisonave was paid $12.00 per hour plus commissions and was paid approximately $200 on the books.

82.     As a manager at the Westchester Puppy Store, Plaintiff Maisonave was paid $14.00 per hour plus puppy sales commissions with $100-$200 on the books.

83.     As a manager at the Brooklyn location Plaintiff Maisonave was paid $15.00-$16.00 per hour plus puppy sales commissions and discretionary bonuses.  Toward the end of Plaintiff Maisonave's employment Defendants began increasing the portion of his pay on the books up to $600 per week.

84.     In connection with this litigation, Defendants fraudulently altered Plaintiff Maisonave's time records in order to make it appear as though he worked less hours than he

14

actually did.

85.     Defendants failed to pay Maisonave overtime premium pay whether working as a sales associate or as an hourly manager or assistant manager.

86.     Plaintiff Maisonave never received accurate wage statements or Wage Theft Prevention Act Notices, either annually or at the commencement of his employment.

**Retaliation**

### *Nudelman's Self-Declared War on Plaintiff Maisonave*

87.     On June 17, 2015, Plaintiff sent Maisonave an e-mail requesting to be paid overtime premium pay and be paid for sick leave pursuant to New York City law.  The email read in part:

> I am writing this letter to remind you of labor laws in place that give your full-time hourly employees of which I am, up to 40 hours of sick leave per calendar year. …
>
> I am paid at an hourly rate of $16.00/hr, even for my hours over 40.  On average since 2012, I worked anywhere between 55 hours to 72 hours a week of which I am paid $16/hr rate. Any hours worked after 40 should have been paid, at time and a half, a rate of $24/hr. Can I please be paid overtime?

88.     The following day Plaintiff Maisonave complained to Nudelman about the condition in which Nudelman keeps and sells his puppies.  During the conversation, Nudelman asked Plaintiff Maisonave to tell him what else Nudelman was doing that was illegal. Plaintiff Maisonave informed Nudelman that his failure to pay overtime and provide paid sick leave was illegal.  During the conversation, Nudelman acknowledged that this conduct was

15

illegal.

89.     At the conclusion of the conversation, less than ten minutes after Plaintiff Maisonave asserted his overtime complaint, Defendant Nudelman terminated Maisonave's employment.

90.     On July 7, 2015, Plaintiffs' counsel sent a letter to Defendant Nudelman informing him of Maisonave's intention to assert his claim for unpaid wages and failure to provide wage statements and Wage Theft Prevention Act notices.

91.     Shortly thereafter Defendant Nudelman contacted several of Maisonave's business associates and threatened them with retaliation, if they did not facilitate his retaliation campaign against Maisonave and his family.

92.     At this time, Maisonave was a founder, Board Member and officer of a non-profit no kill animal rescue facility in Brooklyn, New York (the "Rescue").

93.     On July 14, 2015, Defendant Nudelman contacted Maisonave's co-founder of the Rescue (the "Co-Founder") and demanded that the Co-Founder and the Rescue disassociate from Plaintiff Maisonave.

94.     If the Co-Founder did not accede to Defendant Nudelman's demand, Nudelman threatened to interfere with the Rescue's ability to operate by: 1) contacting every government agency responsible for investigations of animal rescues and filing complaints with them; and 2) doing everything in his considerable power to get the Rescue shut down.

95.     The Co-Founder refused Nudelman's ultimatum and Nudelman then demanded to speak with the Co-Founder's employers (the "Brooklyn Veterinarians").

96.      The Rescue relied on the Brooklyn Veterinarians for low cost medical services,

16

boarding of the rescued dogs and logistical support necessary for the Rescue to care for the dogs.

97.     Nudelman demanded that the Brooklyn Veterinarians terminate the Co-Founder from his employment at the Clinic if he and the Rescue did not disassociate from Maisonave.

98.     Nudelman also threatened that if the Brooklyn Veterinarians did not get rid of Maisonave and the Co-Founder, they would never work with his pet store or any other pet store in New York and that he would do everything he could do to destroy their business.

99.     Nudelman informed other business associates that he would "unearth skeletons in the closet" of the Brooklyn Veterinarians, if they did not participate in his retaliation campaign against Maisonave and his family.

100.    Over the next several days, Defendant Nudelman continued to send the Co-Founder numerous text messages trying to persuade him to "get rid of" Plaintiff Maisonave.

101.    In the text messages, Defendant Nudelman warned the Co-Founder that he "like[s] war" and is "really good at it."



102.    In the text messages, Nudelman promised the Co-Founder, that if he let Maisonave go from the Rescue, Nudelman would make it worth his while by helping the Rescue become successful.  He further threatened "I am a much better partner than I am an adversary."



103.    In the text messages, Nudelman threatened to "go as far as it takes to save myself" and promised that "there is no limits anymore."



104.    On July 17, 2015, the Brooklyn Veterinarians acceded to Nudelman's demands. Plaintiff was told that the Brooklyn Veterinarians insisted that Plaintiff Maisonave either drop his claims against Defendants, or resign from his positions with the Rescue.

105.    Fearful of Nudelman's promise to carry out his threats and ruin any chance of a career that he had in the NYC pet industry, Maisonave decided not to join the lawsuit filed by Plaintiffs Williams and Jeanbart.

106.    After the lawsuit was filed by Plaintiffs Williams and Jeanbart, Nudelman blamed Maisonave for the fact that the lawsuit was filed.

107.    Nudelman than reinitiated his retaliation campaign against Maisonave.

108.    The Brooklyn Veterinarians terminated the Co-Founder, evicted the Rescue

from their premises and cut off further support to the Rescue.

109.    Due to Nudelman's retaliatory campaign, Plaintiff Maisonave has not been able to obtain a job in the industry despite his fifteen years of experience in the industry.  Plaintiff Maisonave has not been able to obtain full-time employment and remains unemployed.

110.    Due to the financial devastation caused by Nudelman's retaliatory campaign, Plaintiff Maisonave and his wife have been forced to leave their apartment and move in with the parents of Plaintiffs Maisonave's wife.

111.    Due to the Nudelman's retaliatory campaign and the pressure he put on the Rescue, in March 2016 Plaintiff Maisonave resigned from his position with the Rescue in order to allow the organization to survive.

### *Nudelman's War on Plaintiff Maisonave's Wife*

112.    Plaintiff Maisonave's wife is a former part-time employee of Defendants.

113.    She currently works for a pet store in Manhattan, New York (the "Manhattan Pet Store"), where Plaintiff Maisonave used to work.

114.    She is also enrolled in a veterinary technician program to further her career in the New York pet industry.

115.    On July 14, 2015, at approximately 6:20 p.m., Defendant Gary Nudelman called the operator of the Manhattan Pet Store in the first of a series of calls concerning his retaliation campaign.

116.    Nudelman demanded that if the Manhattan Pet Store did not terminate Maisonave's wife he would create problems for their business and increase his competitive presence in Manhattan.

117.    Nudelman also told others in the pet industry of the problems he was creating for Maisonave's wife, stating: "His wife may soon not have a job though. We all love her but it is an issue. … From what I understand his wife is very distraught over this."



118.    The Manhattan Pet Store is associated with a veterinarian in Manhattan (the "Manhattan Veterinarian"), who provides medical treatment to the Manhattan Pet Store's dogs.

119.    The Manhattan Veterinarian operates a veterinary clinic in Manhattan, New York and had promised on numerous occasion to hire Plaintiff Maisonave's wife as a veterinary technician once she finishes school.

120.    On or about. July 16, 2015, the Manhattan Veterinarian informed Plaintiff Maisonave's wife that he would not hire her unless she "fixed the situation" with Defendant Nudelman, because he "does not want to bring trouble to his facility."

*Nudelman's War on Plaintiffs and Potential Opt-In Plaintiffs*

121.    Upon information and belief, Nudelman has informed his current employees that if they joined the lawsuit, he would retaliate against them.

122.    After the lawsuit was filed, a representative of World of Pets called Plaintiffs' counsel's office and falsely claimed to be calling on behalf of Plaintiff Jeanbart.   The representative falsely claimed that Plaintiff Jeanbart wanted to withdraw from the action.

123.    After the lawsuit was filed, Nudelman told Maisonave that he would physically assault Plaintiffs Williams and Jeanbart if he saw them.

124.    Plaintiff Maisonave is aware of individuals who are interested in joining the lawsuit, but will not do so because they are afraid that Nudelman will retaliate against them.

## COLLECTIVE ACTION ALLEGATIONS

125.    Plaintiffs bring this action on behalf of themselves and as a collective action pursuant to 29 U.S.C. §216(b).

126.    Employees are "similarly situated" for purposes of FLSA collective wage suits if they are subject to a common policy, plan, or design.

127.    Plaintiffs bring their FLSA claims on behalf of themselves and others similarly situated, namely Defendants' hourly and non-management salaried employees at the Brooklyn and White Plains Puppy Stores who worked from the period from September 10, 2012 to the date of final judgment in this action (hereinafter referred to as the "Puppy Store Collective").

128.    Upon information and belief, the Puppy Store Collective consists of approximately twenty-five (25) similarly situated individuals who have not been paid overtime wages and/or the federal minimum wage and who would benefit from the issuance of a court-

supervised notice of the lawsuit and the opportunity to join the lawsuit.

129.    Defendants have failed to pay overtime premium pay to Plaintiffs and the collective class when working more than forty hours in a workweek.  Defendants have also failed to pay the federal minimum wage to Plaintiff Williams and other similarly situated workers.

130.    Plaintiffs reserve the right to broaden their definition of the Puppy Store Collective and/or add subgroups to this claim as additional members are discovered.

131.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated workers.

132.    Those similarly situated potential collective members are known to Defendants, are readily identifiable, and can be located through Defendants' records.

133.    At the earliest opportunity, the Court should permit notice of pendency of this action to issue to the members of the Puppy Store Collective, so that they may have the opportunity to join this Action.

## CLASS ACTION ALLEGATIONS

134.    Plaintiffs bring their state law claims on behalf of themselves and other similarly situated as representatives of a class of all non-exempt laborers employed by Defendants since September 10, 2009.

135.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, for purposes of the state law claims, Plaintiffs seek the certification of a class of all of Defendants' non-exempt employees (hereinafter referred to as the "Puppy Store Class").

136.    Upon information and belief, the Puppy Store Class includes over fifty (50)

similarly situated individuals who have not been paid minimum wage and/or overtime wages and/or spread of hours wages, who have not received wage payment statements or WTPA Notices.

137.   The class is so numerous as to make it impracticable to join all members of the class as Plaintiffs.

138.   There are questions of law and fact common to all members of the class and those questions predominate over any question affecting only individual class members. Defendants have acted on grounds generally applicable to all class members, in that Defendants' acts and omissions constitute a violation of the wage laws of the State of New York.

139.   Common questions of law and fact include, but are not limited to, the following:

a.   Whether Defendants have consistently failed to pay Plaintiff Williams and other class members the applicable minimum wage as required by the NYLL;

b.   Whether Defendants have consistently failed to pay Plaintiffs and class members overtime wages at one and one-half times their regular rate of pay as required by the NYLL;

c.   Whether Defendants have consistently failed to pay Plaintiff and class members the spread of hours wages as required by the NYLL;

d.   Whether Defendants have, in failing to make required payments to Plaintiffs and others similarly situated, acted willfully;

e.   Whether Defendants have failed to provide WTPA notifications of pay rate

to their employees as required by New York Law; and

    f.   Whether Defendants have consistently failed to provide wage payment statements compliant with the New York Law.

140.    Plaintiffs' overtime, minimum wage, spread of hours and Wage Theft Prevention Act claims, and Defendants' anticipated affirmative defenses thereto, are typical of the claims of and against all class members.

141.    Plaintiffs will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims of the class. Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the class they seek to represent.

142.    Plaintiffs have retained counsel capable of handling class action suits. Neither Plaintiffs nor their counsel have an interest which is in conflict with the class or which might cause them not to vigorously pursue this action.

143.    Pursuant to F.R.C.P. 23(b)(3), class certification is appropriate here because questions of law or fact common to members of the class predominate over any questions affecting only individual members, and because a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## AS AND FOR THE FIRST CLAIM FOR RELIEF
*(Minimum Wage under the FLSA)*

144.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

145.    At all relevant times, Defendants were subject to the minimum wage requirements set forth in the FLSA, 29 U.S.C. § 201 *et seq.*

146.     At all relevant times, Plaintiffs and the Puppy Store Collective were employees of Defendants within the meaning of 29 U.S.C. § 203(e).

147.     At all relevant times, Defendants employed Plaintiffs and the Puppy Store Collective within the meaning of 29 U.S.C. § 203(g).

148.     At all relevant times, Defendants were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

149.     As Defendants shared control of the services of Plaintiffs and the Puppy Store Collective, Defendants are a single "employer" as defined by the Fair Labor Standards Act.

150.     Subject to the statutory time limits, Defendants were required to pay Plaintiffs and the Puppy Store Collective a rate of $7.25 per hour from September 2012 through present pursuant to 29 U.S.C. § 206(a).

151.     Defendants have engaged in a policy and/or practice of failing to pay Plaintiff Williams and members of the Puppy Store Collective the applicable minimum wage for any of the hours Plaintiff William and members of the Puppy Store Collective were required to work.

152.     Defendants have violated 29 U.S.C. § 206(a) by failing to compensate Plaintiff Williams and members of the Puppy Store Collective the applicable minimum hourly wage.

153.     As a result of Defendants' violations of the law and failure to pay Plaintiff Williams and members of the Puppy Store Collective the required minimum wage, Plaintiff Williams and members of the Puppy Store Collective have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorney fees, interest, and costs, pursuant to 29 U.S.C. § 216.

154.    Defendants willfully, knowingly and intentionally have failed to compensate Plaintiff Williams and members of the Puppy Store Collective the required minimum wage.

155.    Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff Williams and members of the Puppy Store Collective.

156.    Due to Defendants' intentional and willful failure to pay Plaintiff Williams and members of the Puppy Store Collective the federal minimum wage, Plaintiff Williams and members of the Puppy Store Collective Store are entitled to additional liquidated damages equal to one hundred percent of the total amount of wages due.

157.    Members of the Puppy Store Collective are entitled to collectively participate in this action by choosing to "opt-in" and submitting written Consents to Join this action, pursuant to 29 U.S.C. § 216(b).

## AS AND FOR THE SECOND CLAIM FOR RELIEF
*(Minimum Wage under the NYLL)*

158.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

159.    At all relevant times, Plaintiffs and members of the Puppy Workers Class were employees and Defendants have been employers within the meaning of NYLL §§ 190, 651 and 652.

160.    At all relevant times, Defendants were subject to the minimum wage provisions of Article 19 of the NYLL.

161.    Subject to the statutory time limits, Defendants were required to pay Plaintiff Williams and members of the Puppy Workers Class at least a minimum wage rate of (a) $7.25 per hour for all hours worked from June 19, 2009 through December 30, 2013; and (b) $8.00

per hour from December 31, 2013 to December 30, 2014 and (c) $8.75 thereafter pursuant to NYLL § 652.

162.    Defendants have engaged in a pattern, practice, policy and/or common scheme of failing to pay Plaintiff Williams and members of the Puppy Workers Class the applicable minimum wage for any of the hours they required Plaintiffs and members of the Puppy Workers Class to work.

163.    Defendants have violated NYLL § 652 by failing to compensate Plaintiff Williams and members of the Puppy Workers Class the applicable minimum hourly wage.

164.    As a result of Defendants' violations of the law and failure to pay Plaintiff Williams and members of the Puppy Workers Class the required minimum wage, Plaintiff Williams and members of the Puppy Workers Class have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorney fees, interest, and costs, pursuant to NYLL §§ 198 and 663.

165.    Defendants willfully, knowingly and intentionally have failed and continue to fail to compensate Plaintiff Williams and members of the Puppy Workers Class the required minimum wage.

166.    Defendants have not made a good faith effort to comply with the NYLL with respect to the compensation of Plaintiff Williams and members of the Puppy Workers Class.

167.    Due to Defendants' intentional and willful failure to pay Plaintiff Williams and members of the Puppy Workers Class the applicable minimum wage, Plaintiff Williams and members of the Puppy Workers Class are entitled to additional liquidated damages equal to one hundred percent of the total amount of wages due, pursuant to NYLL §§ 198 and 663.

## **AS AND FOR THE THIRD CLAIM FOR RELIEF**
*(Overtime under the FLSA)*

168.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

169.    At all relevant times, Defendants were subject to the overtime wage requirements set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*

170.    Defendants expected Plaintiffs and Puppy Workers Collective to work more than forty (40) hours a week, and Plaintiffs and the Puppy Workers Collective regularly worked more than forty (40) hours a week throughout their employment.

171.    At no time have the Defendants paid Plaintiffs and the Puppy Workers Collective a rate of one and one half times their hourly rate of pay for all of the hours they worked in excess of forty (40) hours per week.

172.    Defendants willfully, knowingly and intentionally did not, and continue not to, compensate Plaintiffs and the Puppy Workers Collective for overtime at a rate of one and one half times their hourly rate of pay for all of the hours they worked in excess of forty (40) hours a week.

173.    As a result of Defendants' violations of the law and failures to pay Plaintiffs required overtime wages, Plaintiffs and Puppy Workers Collective have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorney fees, interest, and costs, pursuant to 29 U.S.C. § 216(b).

174.    As Defendants did not have a good faith basis to believe that their failure to pay overtime wages to Plaintiffs and Puppy Workers Collective was in compliance with the law,

Plaintiffs and the Puppy Workers Collective are entitled to additional damages equal to one hundred percent of the total amount of wages due.

175.    Members of the Puppy Workers Collective are entitled to collectively participate in this action by choosing to "opt-in" and submit written Consents to Join this action pursuant to 29 U.S.C. § 216(b).

## AS AND FOR THE FOURTH CLAIM FOR RELIEF
*(Overtime under the NYLL)*

176.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

177.    At all relevant times, Defendants were subject to the overtime wage requirements set forth in Article 19 of the NYLL.

178.    Pursuant to NYLL § 650 *et seq.* and 12 NYCRR 142-2.2, non-exempt employees are required to be paid one and one-half times the employees' regular rate of pay for any hours in excess of forty (40) worked in any workweek.

179.    Defendants expected Plaintiffs and the Puppy Workers Class to work more than forty (40) hours a week, and Plaintiffs and the Puppy Workers Class regularly worked more than forty (40) hours a week throughout their employment.

180.    At no time have Defendants paid Plaintiffs and the Puppy Workers Class a rate of one and one-half times their hourly rate of pay for all of the hours they worked in excess of forty (40) hours per week.

181.    Defendants willfully, knowingly and intentionally have not and continue not to compensate Plaintiffs and the Puppy Workers Class for overtime at a rate of one and one half times their hourly rate of pay for all of the hours they worked in excess of forty (40) hours a

week.

182.   As a result of Defendants' violations of the law and failures to pay Plaintiffs and the Puppy Workers Class required regular and overtime wages, Plaintiffs and the Puppy Workers Class have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorney fees, interest, and costs, pursuant to NYLL § 198 and 12 NYCRR 142-2.2.

183.   As Defendants did not have a good faith basis to believe that their failure to pay overtime wages to Plaintiffs and the Puppy Workers Class was in compliance with the law, Plaintiffs and the Puppy Workers Class are entitled to additional damages equal to one hundred percent of the total amount of wages due, pursuant to NYLL§ 198.

<u>**AS AND FOR THE FIFTH CLAIM FOR RELIEF**</u>
*(Spread of Hours under the NYLL)*

184.   Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

185.   At all relevant times, Plaintiffs and other members of the Puppy Workers Class were and still are required to work in excess of ten (10) hours in a workday.

186.   Plaintiffs and other members of the Puppy Workers Class were and still are entitled to be paid an additional hour's pay at the basic minimum hourly wage rate for every day that they worked a spread of hours that exceeded ten (10) hours or a shift in excess of ten (10) hours, pursuant to the NYLL §§ 190, *et seq.*, and 650, *et seq.*, and 12 NYCRR § 142-2.4.

187.   Defendants failed to pay Plaintiffs and other members of the Puppy Workers Class the spread of hour wages to which they were entitled under NYLL.

188.   Plaintiffs and the Puppy Workers Class were and still are entitled to be paid all

of their earned wages.

189.     Defendants' failure to pay Plaintiffs and other members of the Puppy Workers Class their lawfully due spread of hour wages was a willful violation of NYLL §§ 190, *et seq.*, and 650, *et seq.*, and 12 NYCRR § 142-2.4.

190.     Pursuant to NYLL § 198, Plaintiffs and other members of the Puppy Workers Class are entitled to recovery of full payment of unpaid spread of hour wages, an additional amount equal thereto in liquidated damages, prejudgment interest, attorney's fees, and costs and disbursements of this action.

## AS AND FOR THE SIXTH CLAIM FOR RELIEF
*(Wage Theft Prevention Act Notification Under the NYLL § 195(3))*

191.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

192.     Defendants were obligated to provide Plaintiffs and the Puppy Workers Class with Wage Theft Prevention Act notifications of pay rates beginning upon the commencement of their employment since 2011 and annually from 2012-2014.

193.     At all relevant times, Defendants failed to provide Plaintiffs and the Puppy Workers Class with the Wage Theft Prevention Act notifications, as required by NYLL § 195(1).

194.     As Defendants failed to provide Plaintiffs and the Puppy Workers Class with proper Wage Theft Prevention Act Notices, annually from 2012 to 2014 and upon the commencement of their employment from 20011 to the present as required by NYLL § 195, Plaintiffs are entitled to statutory damages pursuant to the statute.

## AS AND FOR THE SEVENTH CLAIM FOR RELIEF

*(Wage Payment Statements under the NYLL)*

195.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

196.    At all relevant times, Defendants failed to provide Plaintiffs and the Puppy Workers Class with the proper statements with every payment of wages, as required by NYLL § 195(1).

197.    As Defendants failed to provide Plaintiffs and the Puppy Workers Class with proper statements with every payment of wages as required by NYLL § 195(1), Plaintiffs are entitled to statutory damages pursuant to the statute.

## AS AND FOR THE EIGHTH CLAIM FOR RELIEF
*(Retaliation Under the FLSA)*

198.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

199.    Plaintiffs filed complaints or instituted proceedings against Defendants within the meaning and scope of Section 215(a)(3) of the FLSA by filing the initial Complaint in this action and lodging internal complaints about Defendants' unlawful overtime pay practices.

200.    Defendants' behavior towards Plaintiffs and other prospective class members since lodging their complaints, including, but not limited to, termination, threats of termination, threats of physical violence, and adverse employment actions against Plaintiffs or those who would assist Plaintiffs and making comments intended to intimidate workers from participating in or proceeding with the lawsuit, constitutes

discrimination in violation of Section 215(a)(3) of the FLSA.

201.     Due to Defendants' illegal retaliation, Plaintiffs are entitled to legal and equitable relief including, but not limited to, reinstatement, an injunction against further retaliation, payment of lost and withheld compensation, back-pay, emotional distress damages, and additional amounts such as liquidated damages, interest, and reasonable attorneys' fees.

## AS AND FOR THE NINTH CLAIM FOR RELIEF
*(Retaliation under the NYLL)*

202.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

203.     Plaintiffs instituted a proceeding against Defendants within the meaning and scope of Section 215 of the NYLL by filing the initial Complaint in this action and by lodging internal complaint about Defendants' failure to pay overtime.

204.     Defendants' behavior towards Plaintiffs and other prospective class members since lodging their complaints, including, but not limited to, termination, threats of termination, threats of physical violence, and adverse employment actions against Plaintiffs or those who would assist them and making comments intended to intimidate workers from participating in or proceeding with the lawsuit, constitutes discrimination in  violation of Section 215 of the NYLL.

205.     Due to Defendants' retaliation, Plaintiffs are entitled to all appropriate relief, including, but not limited to, reinstatement, enjoining Defendants from   further retaliation, payment of lost and withheld compensation, back-pay, emotional distress  damages, additional amounts such as liquidated damages, interest, and reasonable attorneys'  fees.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request, pursuant to FRCP 38(b), a jury trial on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated persons, seek the following relief:

A. That, at the earliest time possible, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to the Puppy Workers Collective. Such notice shall inform the Puppy Workers Collective that this civil action has been filed, of the nature of the action, and of their right to join this action;

B. Certification of the Puppy Workers Class pursuant to Rule 23 of the Federal Rules of Civil Procedure; designation of Plaintiffs as class representatives; designation of Plaintiffs' counsel as class counsel; and a reasonable incentive payment to Plaintiffs;

C. On the First Claim for Relief on behalf of Plaintiffs and Puppy Workers Collective members against Defendants, for all wages due, an additional award of one hundred percent of all wages, along with all reasonable attorney fees and costs, in an amount to be determined by this Court but greater than the jurisdictional minimum;

D. On the Second Claim for Relief on behalf of Plaintiffs and Puppy Workers Collective Members against Defendants, for all wages due, an additional award of one hundred percent of all wages, along with all reasonable attorney fees and costs, in an amount to be determined by this Court but greater than the jurisdictional minimum;

E. On the Third Claim for Relief on behalf of Plaintiffs and Puppy Workers Collective members against Defendants, for all overtime wages due, an additional award of one

hundred percent of all wages, along with all reasonable attorney fees and costs, in an amount to be determined by this Court but greater than the jurisdictional minimum;

F. On the Fourth Claim for Relief on behalf of Plaintiffs and Puppy Workers Class members against Defendants, for all overtime wages due, an additional award of one hundred percent of all wages, along with all reasonable attorney fees and costs, in an amount to be determined by this Court but greater than the jurisdictional minimum;

G. On the Fifth Claim for Relief on behalf of Plaintiffs and Puppy Workers Class Members against Defendants, for all spread of hours wages due, an additional award of one hundred percent of all wages, along with all reasonable attorney fees and costs, in an amount to be determined by this Court but greater than the jurisdictional minimum;

H. On the Sixth Claim for Relief on behalf of Plaintiffs and Puppy Workers Members against Defendants for failing to provide proper statements with every payment of wages, liquidated damages for every work week in which the violation occurred, up to a maximum of $5,00.00, along with all reasonable attorney fees and cost in an amount to be determined by this Court but greater than the jurisdictional minimum;

I. On the Seventh Claim for Relief on behalf of Plaintiffs and Puppy Workers Members against Defendants for failing to provide WTPA Notices, liquidated damages for every work week in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorney fees and cost in an amount to be determined by this Court but greater than the jurisdictional minimum;

J.  On the Eighth Claim for Relief against Defendants for failing retaliation in violation of the FLSA, declaratory and injunctive relief, back pay, front pay, liquidated, incidental, consequential and punitive damages.

K.  On the Ninth Claim for Relief against Defendants for failing retaliation in violation of the NYLL, declaratory and injunctive relief, back pay, front pay, liquidated, incidental, consequential and punitive damages.

L.  Prejudgment interest on Plaintiffs' New York Labor Law claims;

M.  Costs and disbursements; and

N.  Such other and further relief as is just and proper.

Dated: Melville, New York
      July 28, 2016

                                Respectfully submitted,

                  By: _____
                        Christopher Marlborough
                        THE MARLBOROUGH LAW FIRM, P.C.
                        445 Broad Hollow Road, Suite 400
                        Melville, NY 11747
                        Phone: (212) 991-8960
                        Fax: (212) 991-8952
                        E-mail: chris@marlboroughlawfirm.com

                        Adam Slater, Esq.
                        SLATER SLATER SCHULMAN LLP
                        445 Broad Hollow Road, Suite 334
                        Melville, NY 11747
                        Phone: (631) 420-9300
                        E-mail: aslater@sssfirm.com

                        Attorneys for Plaintiffs